UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

SAMUEL JUAREZ, JR.,

    Petitioner,

v.

No. 6:20-CV-00113-H

DIRECTOR, TDCJ-CID,

    Respondent.

## OPINION AND ORDER

Petitioner Samuel Juarez, Jr., a state prisoner proceeding pro se, seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state-court conviction and sentence. (*See* Dkt. No. 1.) Respondent filed an amended answer with brief in support and relevant records. (*See* Dkt. Nos. 15, 16.) Juarez filed several pleadings in reply. (*See* Dkt. Nos. 19, 20, 21.) As explained below, the Court concludes that Juarez's petition should be denied and dismissed with prejudice.

### 1. Background

This case stems from a vehicle-pedestrian collision that resulted in the death of D.F., an eight-year-old boy who, at the time, was playing outside with his brother. It is undisputed that, on December 17, 2016, Juarez, while driving his vehicle down a neighborhood street in Brownwood, Texas, struck D.F. with his vehicle, causing his death.

In September 2017, a Brown County, Texas grand jury indicted Juarez for two counts of felony murder. (*See* Dkt. No. 15-1 at 3.) During a bench trial, the State presented evidence that Juarez was under the influence of alcohol when his vehicle struck D.F. On October 19, 2017, the 35th Judicial District Court Judge of Brown County, Texas, Stephen Ellis, found Juarez guilty of manslaughter, a lesser-included offense that required the State

to prove that Juarez had "recklessly" caused D.F.'s death.[1] Judge Ellis sentenced Juarez to 20 years' imprisonment. (*See* Dkt. No. 15-1 at 4–5.)

Juarez appealed his conviction on the ground that there was insufficient evidence to prove that he acted recklessly and that his recklessness was the cause of D.F.'s death. He argued that the D.F.'s death was an unavoidable accident because D.F. ran into the street. The Court of Appeals for the Eleventh District of Texas (COA) affirmed Juarez's conviction, and the Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review (PDR). (*See* Dkt. No. 15-1 at 88–95.) *See also Juarez v. State*, No. 11-17-00317-CR, 2019 WL 3023520 (Tex. App.—Eastland 2019, pet. ref'd).

Juarez then filed a state habeas application in the trial court, challenging the validity of his conviction on nine grounds, all of which concern the alleged ineffective assistance of his trial counsel. (*See* Dkt. No. 15-1 at 19–74.) Based on the Court's review of the administrative record, it appears that the State declined to file an answer. Judge Ellis did not hold an evidentiary hearing or enter any findings of fact or conclusions of law. (*Id.* at 16.)

While Juarez's state application was still pending before the TCCA, he filed this federal petition, challenging his conviction on ten grounds. Respondent originally answered that the Court should dismiss Juarez's petition for lack of exhaustion because, at the time, his claims were still pending before the TCCA. (*See* Dkt. No. 7.) Juarez then filed a motion to stay this case pending a ruling on his claims by the TCCA, which the Court granted on February 1, 2021. (*See* Dkt. No. 11.) Nine days later, the TCCA denied Juarez's application without written order. (*See* Dkt. No. 15-1 at 101.) This Court then lifted the stay and ordered Respondent to file an amended answer, which is now pending before the

---

[1] A person commits manslaughter if he recklessly causes the death of an individual. *See* Tex. Penal Code Ann. § 19.04 (a).

Court. Respondent answers that nine of Juarez's claims are conclusory and without merit and one is procedurally barred. Juarez disagrees, insisting that his grounds for relief have merit.

After carefully reviewing the parties' pleadings, relevant state-court records, and applicable law, the Court, for the following reasons, agrees, in part, with Respondent and concludes that an evidentiary hearing is not necessary to resolve Juarez's claims. The Court will address the merits of Juarez's claims below.

2.   **Legal Standard**

   A.   **Exhaustion**

A state prisoner seeking federal habeas relief under Section 2254 is required to exhaust all claims in state court prior to requesting federal collateral relief. *See Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999) (citing *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998)); *see also* 28 U.S.C. § 2254(b). A prisoner satisfies the exhaustion requirement when he has fairly presented the factual and legal basis for a federal claim to the highest state court for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92–92 (5th Cir. 1989). In Texas, this means that a prisoner must present his claims to the TCCA either on direct appeal by a PDR or in an application for state post-conviction relief. *See Richardson v. Procunier*, 762 F.2d 429, 430 (5th Cir. 1985); *see also Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986).

The exhaustion doctrine is designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, as it gives state courts the first opportunity to review and correct all claims of constitutional error. *See Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). However, the exhaustion requirement is not jurisdictional but merely a matter of comity. *See McGee v. Estelle*, 722 F.2d 1206, 1210 (5th Cir. 1984) (citations omitted). This means that a district court may deny habeas relief on the

merits, regardless of whether the applicant has exhausted state remedies. *See Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (citing 28 U.S.C. § 2254(b)(2)).

### B. AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;[2] or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]

28 U.S.C. § 2254(d)(1)–(2).

Relief may not be granted under either subsection of Section 2254(d) unless the petitioner can show that the state court's ultimate decision that a claim lacks merit was unreasonable. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). It is not enough to show that the state court's decision was *incorrect*; federal habeas relief is "not a substitute for ordinary

---

[2] A state-court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

[3] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

error correction through direct appeal." *See Sanchez v. Davis*, 936 F.3d 300, 304–05 (5th Cir. 2019) (citing *Richter*, 562 U.S. at 102–03)). Rather, the petitioner must demonstrate that the state court's ultimate decision "was so lacking in justification that there was an error so well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. In other words, if there is any room for principled judicial disagreement on how a given claim should be adjudicated, then the petitioner is not entitled to relief. *See Sanchez*, 936 F.3d at 304.

This standard is intentionally "difficult to meet" and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Section 2254(d) was designed to confirm that state courts—not federal courts—are the principal forum for asserting constitutional challenges to state convictions and guard against only extreme malfunctions in the state criminal justice system. *See Richter*, 562 U.S. at 102–04.

When analyzing the reasonableness of a state court's ultimate decision that a claim lacks merit, the federal habeas court must (1) look to the state court's particular reasons for rejecting the claim; and (2) only consider the factual record that was before the state court when it adjudicated the claim on its merits. *See Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018); *see also Evans v. Davis*, 875 F.3d 201, 217 (5th Cir. 2017) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011)).

This is a straightforward inquiry when the most recent state court to reject the claim explains its decision in a reasoned opinion. *Wilson*, 138 S.Ct. at 1192. In that situation, a

federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. *Id.*

The inquiry can be more exacting when the most recent state court to reject the claim does not explain its reasons for doing so.[4] Under those circumstances, a federal habeas court must "look through" the unexplained decision to the last related state-court decision that does provide reasons, if there is one. *Id.* at 1192. If an earlier decision exists, the federal habeas court should presume that the unexplained state-court decision adopted the same reasoning, and then proceed with analyzing whether it was unreasonable.[5] *Id.*

However, when there is no earlier state-court opinion to look to, the federal habeas court: (1) assumes that the state court applied the proper federal law to the facts; and (2) then determines whether its ultimate decision was contrary to or an objectively unreasonable application of that law. *See Jordan v. Dretke*, 416 F.3d 363, 368 (5th Cir. 2005) (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)); *see also Thomas v. Vannoy*, 898 F.3d 561, 569 (5th Cir. 2018) (quoting *Evans*, 875 F.3d at 217). In making this determination, the federal habeas court may infer findings of fact necessary to support the state court's ultimate decision. *See Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003). Any such implied findings are presumed correct unless the petitioner presents clear and convincing evidence that demonstrates otherwise. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004).

---

[4] Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *Richter*, 562 U.S. at 100. Even summary denials of relief are entitled to substantial deference. *Id.* at 100–01.

[5] The State may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 138 S.Ct. at 1192.

3. Analysis

In his federal petition, Juarez challenges the validity of his conviction on ten grounds. Respondent argues that the Court should deny Grounds One through Nine as conclusory and without merit and dismiss Ground Ten for lack of exhaustion. The Court will address Respondent's exhaustion defense first.

A. Exhaustion

In Ground Ten, Juarez challenges the sufficiency of the evidence to support his conviction. In one sentence, Juarez contends that the blood sample taken from him *after* the incident occurred—which, when tested, showed that his blood-alcohol content was 0.276, more than three times the legal limit—is insufficient to prove that he was intoxicated and, therefore, "reckless" when his vehicle struck D.F. (*See* Dk. No. 1 at 11.) Respondent answers that this Court is barred from reviewing the merits of Ground Ten because Juarez failed to exhaust it in state court. Specifically, Respondent contends that Ground Ten is unexhausted because Juarez did not present it to the TCCA in his state habeas application. (*See* Dkt. No. 15 at 15.)

Juarez admits that he did not present this claim in his state habeas application. However, in his reply, Juarez points out that his appellate counsel, Tim Copeland, raised this claim on direct appeal. (*See* Dkt. No. 19 at 39.) And in his federal petition, Juarez declares under penalty of perjury that, after his conviction was affirmed on direct appeal, he raised an "insufficient evidence" ground in a PDR, which the TCCA refused without comment. (*See* Dkt. No. 1 at 3.) Because Juarez's PDR is not included in the state-court records provided by Respondent, the Court is unable to decipher the precise nature of the insufficiency claim that he presented to the TCCA. However, Respondent did not file a sur-reply and has not otherwise attempted to refute Juarez's contention that he did present this

claim to the TCCA in his PDR, which, as noted above, is one of two available vehicles that a state prisoner may use to present and "exhaust" his claims in the TCCA.

Under these circumstances, the Court concludes that Juarez did exhaust his state-court remedies for Ground Ten. However, even if Juarez did not, the Court concludes that it nevertheless has jurisdiction to review it under Section 2254(b)(2). Thus, the Court will address the merits of this claim in turn.

### B. Merits

#### i. Ineffective Assistance of Counsel (Grounds One through Nine)

In Grounds One through Nine, Juarez contends that his trial counsel, Lynn Ingalsbe, was ineffective by: (1) not meeting with him a sufficient number of times to discuss the facts of his case; (2) not arranging for him to meet with a private investigator to discuss the case; (3) not calling his own expert witnesses or cross-examining the State's expert witnesses; (4) failing to prepare for and present mitigating evidence at sentencing; (5) failing to investigate and present character witnesses at sentencing; (6) giving Juarez erroneous legal advice; (7) not filing a motion to change venue; (8) not filing a motion to suppress evidence; and (9) not objecting to the State's expert witness's "speculative" testimony. (*See* Dkt. No. 1 at 6–11.)

Because there is no TCCA or earlier state-court opinion that provides any reasoning for denying Juarez's ineffective-assistance-of-counsel (IAC) claims, this Court must assume that the TCCA applied the proper federal law when adjudicating them, which, as pointed out by Respondent, is *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on an IAC claim under *Strickland*, a petitioner must show (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Meja v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687).

8

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). A court considering an IAC claim must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *See Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

"Surmounting *Strickland's* high bar is never an easy task." *Richter*, 562 U.S. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Id.* Unlike a later-reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* The question is whether an attorney's representation amounted to

incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Id.*

Establishing that a state court's application of *Strickland* was unreasonable under Section 2254(d) is all the more difficult. *Id.* The standards created by *Strickland* and Section 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. *Id.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Id.* Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under Section 2254(d). *Id.* When Section 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id.* The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* Additionally, if a petitioner fails to satisfy either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *See Strickland,* 466 U.S. at 697.

Respondent argues that Juarez's IAC claims are wholly conclusory and without merit because they fail to satisfy AEDPA. The Court agrees. In denying each of Juarez's IAC claims, the TCCA implicitly found that he failed to demonstrate either one or both elements of the *Strickland* standard—that Ingalsbe's performance was deficient or that his defense was prejudiced by Ingalsbe's deficient performance. The Court has carefully reviewed the parties' pleadings, applicable law, and the relevant state-court records, including the trial transcript and exhibits that were admitted into evidence at Juarez's trial and sentencing. The TCCA reasonably concluded that Juarez, for each of his IAC claims, failed to satisfy the prejudice prong of *Strickland.*

Juarez is entitled to federal relief only if he can demonstrate that the TCCA's application of *Strickland* to his claims was unreasonable. He has failed to do so here. In his

federal petition, Juarez makes the same conclusory, bald assertions that he presented to the TCCA. In essence, Juarez alleges that Ingalsbe should have done more to prepare for trial and advocate on his behalf at trial and sentencing. As examples, Juarez contends that Ingalsbe should have consulted with him more, conducted a more thorough pretrial investigation, filed certain pretrial motions, cross-examined certain witnesses, and called additional expert and character witnesses on his behalf. But Juarez does not plead any specific facts or present evidence to demonstrate that, had Ingalsbe taken these additional measures, there is a *reasonable probability* that the outcome of his trial or sentence would have been different.[6] In other words, he fails to explain what exculpatory evidence, if any, these additional measures would have uncovered or how these measures, if taken, would have changed or impacted the trial court's credibility assessments or weighing of the evidence at trial and sentencing. Instead, Juarez merely speculates that more vigorous attention and representation by Ingalsbe could have *possibly* changed the outcome. But it is not enough to show that errors had some conceivable effect on the outcome of the proceeding. *See Richter*, 562 U.S. at 104

Moreover, Juarez does not point to any "clear and convincing" evidence to rebut the TCCA's implicit findings, which are presumptively correct. Nor does he explain how the

---

[6] In his "Traverse to Response to Order to Show Cause," which Juarez filed in response to Respondent's amended answer, Juarez attempts to raise new factual allegations in support of Grounds One through Nine. (*See* Dkt. No. 19.) However, on November 11, 2020, the Court specifically instructed Juarez that any pleading he filed in response to Respondent's answer "must be limited to the arguments raised by Respondent and shall not include any new allegations of fact or new grounds for relief." (*See* Dkt. No. 4 at 2.) Thus, the Court will not consider or address the merits of Juarez's response, to the extent it raises any factual allegations or grounds for relief that he did not raise in his original federal habeas petition. In addition, in his other "supplemental" pleadings filed in response to Respondent's amended answer, Juarez attempts to present new exhibits in support of his claims that were not presented to the TCCA. (*See* Dkt. Nos. 20, 21.) Because the Court may only consider the factual record that was before the state court when adjudicating the merits of Juarez's claim, the Court will not consider these exhibits here. *See Evans*, 875 F.3d at 217 (citations omitted).

TCCA's application of *Strickland* to his claims was unreasonable or that its denial of them was based on an unreasonable determination of the facts in light of the evidence presented to it.

Because Juarez has failed to overcome the double deference afforded to IAC claims under Section 2254(d), the Court concludes that he is not entitled to federal habeas relief on Grounds One through Nine.

### ii.   Sufficiency of the Evidence (Ground Ten)

In Ground Ten, Juarez claims that the evidence adduced at trial was insufficient to support his conviction for *one* reason—the blood sample taken from him after the incident occurred is insufficient to prove that he was intoxicated and, therefore, "reckless" when his vehicle struck D.F. (*See* Dk. No. 1 at 11.) He contends that D.F.'s death was an unavoidable accident.

Assuming Juarez raised this claim in his PDR, the TCCA, in refusing it, did not provide any reasoning for rejecting this claim.[7] Under these circumstances, *Wilson* mandates that this Court presume that the TCCA adopted the COA's reasoning for doing so and then analyze whether that reasoning was unreasonable.

Here, the COA reviewed Juarez's claim under *Jackson v. Virginia*, 443 U.S. 307 (1979), which establishes the legal standard for reviewing the sufficiency of the evidence to

---

[7] Although challenges to the sufficiency of the evidence are not cognizable in a Texas application for a writ of habeas corpus, the Court concludes that the TCCA adjudicated Juarez's claims on their merits in refusing his PDR. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). It is not necessary for the state court to indicate affirmatively that its disposition of federal claims is on the merits. *See Dorsey v. Stephens*, 720 F.3d 309, 316 (5th Cir. 2013) (citations omitted). The presumption that a state-court decision was on the merits is a strong one that may be rebutted only in unusual circumstances. *Id.*; *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest upon the same ground."). Here, Juarez raised his sufficiency claim in his counseled direct appeal and then, to some degree, in his PDR, which the TCCA refused without comment. There is no indication in the record that the TCCA refused Juarez's PDR on procedural grounds.

support a criminal conviction. (*See* Dkt. No. 15-1 at 89.) Under *Jackson*, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution—*not* the defendant—any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the record evidence presented at trial. *Jackson*, 443 U.S. at 319 (citations omitted). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts. *Id.* Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that, upon judicial review, *all of the evidence* is to be considered in the light most favorable to the prosecution. *Id.* This means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *See Cavazos v. Smith*, 565 U.S. 1, 6 (2011) (citing *Jackson*, 443 U.S. at 319).

In its eight-page opinion, the COA conducted a thoughtful review of the evidence admitted at trial in conjunction with the applicable criminal statute and caselaw interpreting it. (*See* Dkt. No. 15-1 at 88–95.) Specifically, the COA defined "recklessness" and concluded that, under Texas law, evidence that Juarez was driving under the influence of alcohol could be used to demonstrate that he acted recklessly:

> As we have said, [Juarez] does not dispute that he was intoxicated when he struck D.F. with his vehicle. Although [Juarez's] blood alcohol content was 0.276 when the officer later found him, McGinty testified that [Juarez's] blood alcohol content could have been higher at the time of the accident. As a reasonable factfinder, the trial court could have inferred from this evidence alone that [Juarez] was aware of but acted with a conscious disregard of a substantial and unjustifiable risk and that he, therefore, was reckless. *See Moya v. State*, 426 S.W.3d 259, 267 (Tex. App.—Texarkana 2013, no pet.); *Rubio v. State*, 203 S.W.3d 4458, 452 (Tex. App.—El Paso 2006, pet ref'd)

13

> ("[T]he actions of driving under the influence of alcohol can be used to show a conscious disregard of a substantial risk.").

(*Id.* at 93–94.)

Further, after acknowledging that the evidence arguably could have supported the conflicting inference that the incident was unavoidable, the COA explained as follows:

> The trial court was free to resolve any conflicting testimony, and as a rational factfinder, it apparently chose not to believe testimony that the incident was unavoidable given [Juarez's] intoxicated condition, actions, omissions, and words just before and after the incident. The trier of fact may believe all, some, or none of a witness's testimony because the trier of fact is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd).
>
> After a review of the record in the light most favorable to the verdict, we hold that the State presented sufficient evidence for the trial court to find beyond a reasonable doubt that [Juarez] acted recklessly and that he committed the offense of manslaughter. We overrule [Juarez's] sole issue on appeal.

(*Id.* at 94.)

Juarez is not entitled to relief unless he can demonstrate that the TCCA's presumed adoption of the COA's reasons for denying his claim was unreasonable. After reviewing Juarez's entire trial transcript and all exhibits that were admitted into evidence at his trial, in conjunction with the applicable law, the Court concludes that Juarez has failed to do so.

Here, Juarez merely insists that his claim has merit. He points to other trial evidence, including the testimony of Juan Sanchez, which he contends proves that his striking D.F. was an unavoidable accident.[8] But, as acknowledged by the COA, the Court

---

[8] Here again, in his "Traverse to Response to Order to Show Cause," Juarez attempts to raise new factual allegations in support of Ground Ten. (*See* Dkt. No. 19.) He contends that D.F.'s death was an unavoidable accident and the evidence, for various reasons, was insufficient to prove that his recklessness (versus D.F. unexpectedly entering the roadway) caused D.F.'s death. (*See* Dkt. No. 19 at 39–41.) But, as previously noted, the Court specifically instructed Juarez that any pleading he filed in response to Respondent's answer "must be limited to the arguments raised by Respondent and shall not include any new allegations of fact or new grounds for relief." (*See* Dkt. No. 4 at 2.)

does not dispute that the evidence adduced at trial could arguably support conflicting inferences—that D.F.'s death was either caused by Juarez's recklessness or entirely accidental. But AEDPA does not permit this Court to conduct a de novo review of Juarez's claim. In other words, on federal habeas review, this Court may not make its own credibility assessments, reweigh the evidence, or substitute its own opinion for that of the trial court or the TCCA. Rather, as explained by the COA, it is the sole province of the fact finder to assess the credibility of the testimony given at trial and weigh the evidence. And under *Jackson*, once a criminal defendant has been convicted, a reviewing court *must* presume that the fact finder resolved any conflicting inferences raised by the evidence in favor of the prosecution and defer to that resolution. This is precisely what the COA, and presumably the TCCA, did in denying Juarez's claim. Juarez makes no effort to explain how the TCCA's application of *Jackson* to his claim was unreasonable or that its denial of it was based on an unreasonable determination of the facts in light of the evidence presented to it.

Thus, the Court concludes that Juarez is not entitled to relief on Ground Ten.

4. **Conclusion**

For the foregoing reasons and those stated in Respondent's amended answer, the Court concludes that Juarez has failed to demonstrate that the TCCA's adjudication of his claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings. *See* 28 U.S.C. § 2254(d).

---

Thus, the Court will not consider or address the merits of Juarez's response, to the extent it raises any factual allegations or grounds for relief that he did not raise in his original federal habeas petition.

The Court therefore orders:

(1) The petition for writ of habeas corpus is denied and dismissed with prejudice.

(2) All relief not granted is denied, and any pending motions are denied.

(3) Under Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), this Court concludes that a certificate of appealability should be denied. For the reasons set forth above and in Respondent's answer, Juarez has failed to show that reasonable jurists would find (1) this Court's "assessment of the constitutional claims debatable or wrong," or (2) "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court will enter judgment accordingly.

Dated November 15, 2022.

JAMES WESLEY HENDRIX
United States District Judge